UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ONATAH FARMS LLC, *et al.*,[1] | ) | Case No. 21-10091 |
| | ) | |
| | ) | (Joint Administration Requested) |
| Debtors. | ) | |

## DEBTORS' FIRST DAY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING DEBTORS TO USE CASH COLLATERAL FOR OPERATING EXPENSES AND GRANTING REPLACEMENT LIENS TO SECURED CREDITORS

Onatah Farms LLC, NCI Farms LLC, MBD Farms LLC, Doug Morrow, and Mary Beth Morrow, as debtors and debtors-in-possession (each a "**Debtor**"; collectively, "**Debtors**"), by proposed counsel[2], pursuant to 11 U.S.C. § 363, Federal Rule of Bankruptcy Procedure 4001(b), and Southern District of Indiana Local Rule B-4001-2, requests that the Court enter an Order authorizing the use of Cash Collateral as defined by 11 U.S.C. § 363(a) for operating expenses on an interim basis through a hearing on a final Order, and the granting of replacement liens, and in support of such request states as follows:

### Procedural Background, Jurisdiction, Venue, and Statutory Basis

1. On February 3, 2021 (the "**Petition Date**"), Debtors each filed a Voluntary Petition under Chapter 11 of Title 11 of the United States Code.

2. This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157, 1334, and venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Onatah Farms LLC (5031); NCI Farms LLC (0928); MBD Farms LLC (5025); Doug Morrow (9660); and Mary Beth Morrow (7025).
[2] An Application to Employ proposed counsel is being filed concurrently herewith.

3. The statutory and legal predicates for the relief sought herein are section 105(a) and 363 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rules B-4001-2 and B-9013-3 of the Local Rules of the United States Bankruptcy Court for the Southern District of Indiana (the "**Local Rules**").

4. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (M) and is a matter of federal bankruptcy law.

## Background of Debtor

5. Debtors continue to operate their business and manage their property as debtor-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108 of the Bankruptcy Code.

6. No trustee or examiner has been appointed in this Chapter 11 case and no official unsecured creditors' committee has been appointed herein.

7. Onatah Farms LLC was organized on January 29, 2016, as an Indiana limited liability company and has operated and continues to operate.

8. Onatah Farms LLC is part of a large farming operation owned by Doug Morrow ("**Doug**") and Mary Beth Morrow ("**Mary Beth**"; together with Doug, the "**Morrows**"), which include the following entities: *Onatah Farms LLC*, *MBD Farms LLC*, *NCI Farms, LLC*, as well as a custom silage operations operating under *Onatah Forages, LLC* and *Onatah Forages, LLC Missouri* (collectively, the "**Companies**").

9. The Companies have incurred significant material operating losses (estimated in excess of $8 million) in fiscal years 2018 through fiscal year 2020 almost exclusively due to issues related to Onatah Forages, LLC ("**Forages**").[3]

10. Additionally, historically low commodity prices for corn and soybeans hampered the enterprise to fund losses in Forages.  As losses mounted and obligations to lending institutions were not being met, additional non-operating expenses increased dramatically in the form of lender fees and penalty interest.

11. As set forth below, the Companies have an estimated $21.0 million in secured and $2.6 million in unsecured debt obligations.

12. Unfortunately, some of Debtors' and the Companies' lenders have taken aggressive actions in an effort to collect on the obligations owed them and as a result, Debtors and the Companies commenced this case in an effort to reorganize all of their obligations, streamline their business model and continue the farming operations while meeting their post-petition obligations and restructuring their debt in an attempt to pay creditors over time pursuant to a plan of reorganization.

13. Two key components of Debtors and the Companies streamlining the farming operations is the wind down of the Forages operations and scaling back the projected acres that will be farmed during the 2021 season.

14. Debtor estimates that it will plant 9,825 acres in court and soybeans resulting in an estimated $6.67 million in revenue for the 2021 season.

---

[3] Forages has not operated for more than one (1) year and has not filed for bankruptcy protection due to nearly all of its assets being sold prior to the Petition Date.

15.     Prior to the Petition Date, Debtors have been working closely with a financial advisor, Steeplechase Advisors, LLC ("**Steeplechase**")[4], with whom Debtors expect to continue to work with during this case.

*16.*     Additional information about Debtors' business, capital structure, and the circumstances leading to these chapter 11 cases is contained in the concurrently filed *Declaration of Doug Moore in Support of Debtor's Chapter 11 Petitions and First Day Motions* (the "**First Day Declaration**")[5], which is incorporated herein by reference.

## Requested Relief

17.     As of the Petition Date, Debtor believes the value of the personal property and all of its assets (the "**Collateral**") which are owned by Debtors or the Companies (collectively, the "**Debtor Parties**"), which may be subject to the alleged interests of the parties identified in the First Day Declaration that have filed UCC Financing Statements, is approximately $18,803,154.

18.     The Debtor Parties base such estimation on schedules they have prepared with Steeplechase but have not had formal appraisals completed[6]. As such, Debtor's estimation of the value is a good faith estimate which may or may not be the actual value of all of the Collateral, and Debtors reserve the right to file their Schedules and Statements or Amended Schedules and Statements with differing amounts. Debtors further reserve the right to have formal appraisals of their own conducted.

---

[4] An Application to Employ Steeplechase is also being filed concurrently herewith.

[5] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

[6] One of Debtor's creditors, First Financial Bank, has completed appraisals on the Debtor Parties' real estate.

19. Debtors have performed a preliminary investigation and analysis of the related UCC filings and based upon this preliminary investigation believes that the assets of Debtors may serve as collateral to secure the payment of certain of the above-referenced obligations. Debtors do not concede, however, that any asserted interest is a valid, perfected, or enforceable pre-petition lien in and to any of the assets nor do Debtors concede the priority of any one creditor's interest. Debtors expressly retain the right to contest the validity, perfection, and enforceability of all alleged interests.

20. As of the Petition Date, Debtor's <u>estimated</u> outstanding indebtedness to the foregoing creditors was as follows:

| Creditor | Original Loan Amount | Estimated Balance as of 2/2/21 | Liquidation Value as of 2/2/21 | Collateral |
|---|---|---|---|---|
| First Financial Bank | $15,508,000 | $11,581,000 | $ 6,824,162 | Equipment, Real Estate, and Crop Inventory |
| Ag Resource Management (ARM) | $ 3,969,090 | $ 2,700,000 | $ 2,581,304 | Crop Inventory |
| Grant County State Bank | $ 2,490,000 | $ 2,187,123 | $ 1,684,337 | Equipment and Real Estate |
| Ceres Partners | $ 2,189,000 | $ 2,189,000 | $ 226,961 | Crops Inventory |
| Community State Bank | $ 1,150,000 | $ 1,070,000 | $ 1,031,750 | Real Estate |
| CNH Capital | $ 830,531 | $ 406,285 | $ 316,275 | Equipment |
| Landmark Bank | $ 766,932 | $ 766,932 | $ 739,516 | Real Estate |
| John Deere Financial | $ 481,126 | $ 74,000 | $ 57,084 | Equipment |
| Farm Credit Services | $ 140,000 | $ 26,500 | $ 25,553 | Equipment |
| TOTAL | $27,524,679 | $21,000,840 | $13,486,942 | |

(hereinafter, collectively, the "**Creditors**").

21. Debtors believe any obligations it may have to any of the Creditors arises under a trade agreement or a security agreement.

22. In order to permit, among other things, the orderly and continued operation of Debtors' business, Debtors have an immediate need to use Cash Collateral in which the Creditors may assert an interest. The use of Cash Collateral is necessary to prevent immediate and irreparable harm to Debtors and their property that would

otherwise result if Debtors are prevented from obtaining use of Cash Collateral for the continued operation of their business.

23.    Debtors have no present alternative borrowing source from which to secure sufficient additional funding to operate its business without utilizing Cash Collateral.

24.    Debtors are unable to operate their businesses without interim use of Cash Collateral.

25.    Without interim relief, Debtors will not be able to operate their business for more than a few days until a final hearing on this motion can be held.  Accordingly, the Court, as a preliminary matter, should enter an interim order authorizing Debtors to use Cash Collateral.

26.    Certain of Debtors' Petition Date cash and cash equivalents (cash and accounts receivable) **may** constitute "cash collateral" (as that term is defined in Section 363(a) of the Bankruptcy Code).  On the Petition Date, Debtors had cash on hand or on deposit in the approximate amount of $250,336.05 and grain which is stored with a value of approximately $2,850,000, both of which are cash collateral within the meaning of Section 363(c)(2) of the Bankruptcy Code (the "**Cash Collateral**").

## Basis for Requested Relief

27.    Under Section 363(c)(2)(B) of the Bankruptcy Code, Rule 4001 of the Federal Rules of Bankruptcy Procedure, and Local Rule 4001-2, Debtors request that the Court enter an Order authorizing their interim use of Cash Collateral for payment of their ordinary and necessary operating expenses through the date of a final hearing on

this motion.  Debtors request such use based on the proposed budget which is attached hereto as **Exhibit A**.

28. Creditors may be entitled to adequate protection of their alleged interests in Debtors' Cash Collateral.  If and to the extent such creditors have an interest in Debtors' Cash Collateral, Debtors, therefore, agree and request authority to provide adequate protection as follows:

a) Debtor will maintain the combined value of (i) cash on hand or on deposit plus (ii) grain in the amount of $2,850,000 during the period of cash use, which is believed to be the cumulative value of said Cash Collateral as of the Petition Date;

b) Upon receipt of $400,000 in crop insurance, which is expected to be received in or about late February, Debtor will retain $100,000 and will pay the remaining $300,000 to Ag Resource Management ("**ARM**");

c) Creditors have filed UCC financing statements in relation to the property that constitutes Cash Collateral in this case, and some or all of them may be properly perfected. It is also possible that Debtor has a basis to challenge the interests asserted by Creditors. As such, until such time as the parties agree or the Court determines the relative rights of Creditors, if any, in the Cash Collateral, Debtors will grant Creditors post-petition replacement liens in the cash and grain of Debtors in the total aggregate amount of the value of the Cash Collateral that existed as of the Petition Date to the same extent and priority as their properly perfected, prepetition security interests; and

    d) Debtors will use Cash Collateral only for the operation, maintenance, and upkeep of all of its assets and for expenses incurred in the ordinary course of business.

29.    In the event the Court does not authorize the use of the Cash Collateral, Debtors believes they will not be able to maintain its current business operations.

30.    Without use of Cash Collateral, Debtors will be seriously and irreparably harmed, resulting in significant losses to Debtors' estate and its creditors.

31.    Furthermore, without the use of Cash Collateral, Debtors will be unable to pay its employees for wages earned both prior to the Petition Date[7] and thereafter.

### The Requirements of Bankruptcy Rule 6003 are Satisfied

32.    Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm."  Authorizing Debtors to use Cash Collateral is integral to the Debtors' ability to maintain their operations and successfully reorganize. There is a real, immediate risk that, if Debtors are not authorized to use Cash Collateral, Debtors will be unable to obtain the inputs necessary in order to plant crops for the 2021 season, thereby effectively terminating Debtors' farming operations.  The resulting impact on Debtors would cause the Debtors irreparable harm that would thwart Debtors' restructuring efforts.

33.    Consequently, it is critical that the Debtors are able to use Cash Collateral in the ordinary course of their business.

---

[7] Concurrently herewith, Debtor is filing a First Day Motion to Pay Prepetition Wages.

34. Based on the forgoing, Debtors submit that it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested in this Motion.

## **Debtor's Waiver of Bankruptcy Rules 6004(a) and 6004 (h)**

35. To implement the foregoing successfully, Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## **Reservation of Rights**

36. Nothing contained in this Motion or any actions taken by Debtors pursuant to relief granted in the Interim Order and Final Order is intended or should be construed as: (a) an admission as to the validity, priority, or amount of any particular claim against a Debtor entity; (b) a waiver of the Debtors' or any other party in interest's rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of Debtor's or any other party in interest's rights under the bankruptcy Code or any other applicable law; or (g) a concession by Debtors or any other party in interest that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this Motion are valid, and Debtors and all other parties in interest expressly reserve their rights to contest the extent, validity, or perfection, or to seek avoidance of all such liens. If the Court grants the relief sought herein, any payment

made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity, priority, or amount of any particular claim or a waiver of the Debtors' or any other party in interest's rights to subsequently dispute such claim.

**WHEREFORE**, Onatah Farms LLC, NCI Farms LLC, MBD Farms LLC, Doug Morrow, and Mary Beth Morrow, as debtors and debtors-in-possession (each a **"Debtor"**; collectively, **"Debtors"**), by proposed counsel, respectfully requests the Court enter an order (i) authorizing and allowing Debtors to use Cash Collateral on an interim basis pursuant to § 363(c)(2)(B) of the Bankruptcy Code for its general ongoing business operations through the entry of a Final Order; (ii) scheduling a final hearing on Debtors' use of Cash Collateral; and (iii) granting Onatah Farms LLC, NCI Farms LLC, MBD Farms LLC, Doug Morrow, and Mary Beth Morrow all other relief the Court deems just and proper under the circumstances.

Respectfully submitted,

*/s/ Weston E. Overturf*
Weston E. Overturf, Attorney No. 27281-49
Sarah L. Fowler, Attorney No. 30621-49
OVERTURF FOWLER LLP
201 N. Illinois Street, South Tower, 16th Floor
Indianapolis, Indiana 46204
(317) 559-3387
wes@ofattorneys.com

*Proposed Counsel for Debtors and Debtors in Possession*